UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRENA M. FIRKINS,                        )
     *Plaintiff*,                           )
                                       )
     *vs.*                                )       1:09-cv-00923-JMS-TAB
                                       )
MICHAEL J. ASTRUE, Commissioner of the   )
Social Security Administration,          )
     *Defendant*.                          )

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Brena M. Firkins filed an application for Supplemental Social Security Income benefits on January 27, 2006, claiming that she had been disabled since August 1, 1990. [R. 12.] Defendant Michael J. Astrue, the Commissioner of the Social Security Administration (the "Commissioner"), denied her application both initially and after reconsideration. [R. 56, 48.] She subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 12, 2008 and resulted in another denial on April 17, 2009. [R. 12.] She then requested that the Appeals Council review the ALJ's decision. [R. 7.] On May 29, 2009, that request was denied. [R. 4.] Ms. Firkins ultimately filed this action under 42 U.S.C. § 405(g), requesting a review of the denial of her application for benefits. [Dkt. 1.]

### BACKGROUND

Ms. Firkins, who was 39 years old when she filed this application for SSI, has a long and documented history of mental illness.[1] [R. 22, 467.] Between August and November 1997, she

---

[1] Although Ms. Firkins made two prior applications for SSI which were denied [R. 12], the Commissioner does not argue that those denials have any effect on the application at issue here, other than to limit the relevant time period. Because the ALJ declined to reopen the two prior decisions and considered evidence from the time periods covered by those decisions only as

received emergency treatment three times for intentional overdoses of alcohol and medication. [R. 385-87, 401-04.]  Between March and May 1998, Ms. Firkins was treated three times for symptoms including anxiety, depression, and hallucinations; she was diagnosed with mixed anxiety disorder, depression, and schizoaffective disorder and prescribed Risperdal, Effexor, and Valium.  [R. 388-94.]

Ms. Firkins received treatment from her primary care physician, Dr. Chheda, in February 2004.  [R. 308.]  He prescribed Klonopin to treat her panic disorder and Doxepin for her anxiety. [*Id.*]  One month later, Ms. Firkins went to the emergency room and received treatment for a panic attack.  [R. 305.]  She was diagnosed with substance abuse at that time.  [*Id.*]  Two months after that, she again received emergency treatment for a panic attack, this time brought on by stress and anxiety.  [R. 298.]  In June 2004, Ms. Firkins went to a crisis intervention center for her panic attacks and depression.  [R. 238.]  She admitted to using drugs.  [*Id.*]  The counselor believed her anxiety was causing her symptoms.  [R. 330.]  In January 2005, Ms. Firkins went back to the center, where she expressed concern about medication and drug use during pregnancy and complained of anxiety.  [R. 239-240.]  Two months later, she returned in order to resume her medications after her miscarriage; she was complaining of anxiety, inability to focus, and auditory hallucinations.  [R. 241-42.]  From March to May 2005, she was evaluated four more times for symptoms including paranoia, anxiety, and auditory hallucinations.  [R. 243, 250, 251, 253.]

---

background [*id.*], this Court will do likewise, noting that Ms. Firkins did not appeal the Commissioner's refusal to reopen the evidence in her case.

Prior to filing this application for SSI benefits, Ms. Firkins was evaluated by two consulting psychologists:  Dr. Rasmussen and Dr. O'Brien.[2]  [R. 278-280, 192-195.]  Dr. Rasmussen saw her in August 2005 and diagnosed her with recurrent severe major depression.  [R. 280.]  He described her mental capacity as "moderately to severely impaired," assigned her a GAF score of 40,[3] and opined that she could not manage her own funds.  [*Id.*]  Dr. O'Brien saw Ms. Firkins in April 2006 and diagnosed her with paranoid schizophrenia, major depressive disorder, and panic disorder with agoraphobia.  [R. 203.]  He noted that she admitted recent drug abuse and stated that she had been in special education classes in school and repeated several grades.  [R. 200.]  In May 2006, Dr. O'Brien gave Ms. Firkins an intelligence test.  [R. 195.]  Based on the results of that test, he added mild mental retardation and cocaine abuse (in early full remission) to his previous diagnoses.  [*Id.*]  He also gave Ms. Firkins a GAF score of 55,[4] and opined that she would have trouble managing her funds.  [*Id.*]

Two consulting psychologists completed Psychiatric Review Technique Forms on Ms. Firkins:  Dr. Kladder, Ph.D. and Dr. Shipley, Ph.D.  [R. 256-273, 178-91.]  In September 2005, Dr. Kladder opined that Ms. Firkins could perform simple, repetitive tasks, but that her depression and drug abuse caused moderate limitations in her concentration, persistence, and pace and mild limitations in her activities of daily living and social functioning.  [R. 256-73.]  In June 2006, Dr. Shipley, Ph.D. opined that Ms. Firkins suffered from major depressive disorder,

---

[2] Considering the fact that these examinations were done for the purpose of a prior application and thus fall inside a time period covered by a prior denial decision, the Court notes that the ALJ was generous in choosing to consider them as substantive evidence in this case.

[3] A GAF score is a numerical assessment of psychological, social, and occupational functioning. The scale is 1-100.  GAF scores in the range of 31-40 indicate "some impairment in reality testing or communication…or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

[4] GAF scores in the range of 41-50 indicate "[s]erious symptoms…or any serious impairment in social, occupational, or school functioning."  *Id.*

but that her other ailments (paranoid schizophrenia, mild mental retardation, and panic disorder) were likely caused by her drug abuse. [R. 190.] He further opined that her drug abuse caused marked limitations in her activities of daily living, social functions, and concentration, persistence, or pace.[5] [R. 178-91.]

In January 2006, Dr. Chheda wrote a letter stating that Ms. Firkins was "unable to work due to severe anxiety"; he reiterated this opinion twice in the following months. [R. 155-56, 165.] In October 2007, Ms. Firkins again attempted suicide and was subsequently hospitalized for one week. [R. 407-409, 477.] Before she was discharged, Dr. Rao examined her, diagnosed her with major depressive disorder and alcohol dependence, and gave her a GAF score of 55. [R. 413.] Between June and September 2008, Ms. Firkins was treated five times by various providers for anxiety, depression, and hallucinations. [R. 418-21, 443-45.] Both a treating counselor[6] and Dr. Liffick, a resident who examined Ms. Firkins, confirmed Dr. Rao's previous diagnosis of major depressive disorder. [R. 421, 443.] Dr. Liffick also opined that Ms. Firkins's cocaine addiction was in full sustained remission. [*Id.*]

Dr. Kravitz, a medical expert, testified at the hearing. [R. 466.] Although he never examined or treated Ms. Firkins, he is an expert in psychology and he reviewed the record before testifying. [R. 493.] Dr. Kravitz opined that based on her work history and ability to schedule and keep therapy appointments on her own, Ms. Firkins did not suffer from mental retardation. [R. 494-95.] He opined that she had a "mild to moderate impairment" in her activities of daily living and moderate impairments in social functioning and in concentration, pace, and

---

[5] Dr. Shipley opined that Ms. Firkins's limitations due to drug abuse met the requirements for Listing 12.09 (substance addiction disorder). [R. 178-91.] However, Ms. Firkins does not claim to meet or equal that Listing in the instant case.

[6] The Court does not refer to the counselor by name because the counselor's name is illegible in the record. [R. 421.]

persistence.  [R. 496.]  Dr. Kravitz stated that Ms. Firkins had experienced one episode of decompensation in October of 2007, but expressed doubt as to whether the episode was caused by psychological symptoms or by substance abuse.  [*Id.*]  In response to counsel's questions, Dr. Kravitz testified in detail as to why he did not concur with Dr. O'Brien's diagnoses of mental retardation and schizophrenia.  [R. 498-511.]

Relying in large part on Dr. Kravitz's testimony, the ALJ found that Ms. Firkins suffers from four "severe" impairments:  anxiety, depression, borderline intellectual functioning, and substance abuse.  [R. 14.]  However, he found that these impairments do not, either singularly or in combination, meet or medically equal any Listed Impairment.  [R. 15.]  He also found that Ms. Firkins has a Residual Functional Capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitation:  The work must be simple and repetitive, no unusual work stress, no frequent changes in job routine, and not more than brief and superficial interactions with the general public, coworkers, or supervisors."  [R. 17.]  The ALJ further found that this RFC would permit Ms. Firkins to undertake the following occupations:  maid, janitor, assembler, or hand packager.  [R. 23.]

### DISCUSSION

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)

(quotations omitted).  If the ALJ committed no legal error and substantial evidence exists to support the denial decision, the Court must affirm the denial of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can she perform her past relevant work, and [if not] (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After Step Three, but before Step Four, the ALJ must determine a claimant's RFC—the claimant's physical and mental abilities considering all the claimant's impairments—which the ALJ uses at Step Four to determine whether the claimant can perform her own past relevant work (if any) and, if she cannot, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).

Here, Ms. Firkins claims error regarding Step Three, the ALJ's credibility determination, and Step Five.

## I.  Step Three

At Step Three, the ALJ must consider whether a disability applicant has one or more conditions that the Social Security Administration considers conclusively disabling.  Those conditions, or "Listed Impairments," are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Given the fractured presentation of Ms. Firkins's arguments at Step Three, the Court restates her Firkins's claims of error as follows:  (1) the ALJ failed to give fair consideration to Ms. Firkins's disability claim and thus violated her right to due process of law, and (2) the ALJ did not afford

appropriate weight to the opinions of Ms. Firkins's treating and examining physicians and her ex-husband and thus failed to consider all of the evidence Ms. Firkins submitted to prove her disability claim.  [Plaintiff's Brief at 23-33.]

### A.  Due Process

Ms. Firkins first makes a general Due Process attack on the ALJ's decision at Step Three. [Plaintiff's Brief at 23-24.]  However, her assertion of error consists solely of vague, conclusory statements and bald citations to authority, without any application of the law to the specific facts of her case.  Thus, because she does not adequately develop her claim with cogent argument, the Court will not address it.  *See Lachman v. Ill. State Bd. of Ed.*, 852 F.2d 290, 291 n.1 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument" (citation omitted)).

### B.  Consideration and Weight of Evidence

Ms. Firkins argues that the ALJ "ignored, rejected, or only selectively considered" some of the evidence she offered in support of her disability claim, and that the ALJ erroneously discounted evidence from her treating physicians in favor of testimony from Dr. Kravitz, an agency psychiatric expert.  [Plaintiff's Brief at 26.]  The Commissioner asserts that Ms. Firkins has waived this argument by providing only a laundry list of evidence without any analysis to demonstrate its relevance.  [Commissioner's Brief at 16.]  The Court will first address the Commissioner's allegation of waiver before proceeding to the merits of Ms. Firkins's claims of error at Step Three.

### 1.  Waiver

It is true that this Court "is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case."  *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) (citations omitted).  However, "[e]ven a woefully

underdeveloped argument is not necessarily forfeited when the district court knew and understood the argument the party intended to make." *U.S. v. Fields*, 2010 WL 1725060, *2 (7th Cir. 2010) (quotation omitted) (court found defendant's arguments were not waived even though they were somewhat unspecific). Additionally, where a party has proffered "more than mere perfunctory argument" in support of her claims, a finding of waiver is inappropriate. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006) (plaintiff's arguments were not waived even though she failed to cite relevant legal authority because she did cite record evidence and make a cogent argument).

Here, Ms. Firkins's argument would have been more persuasive and cogent if she had identified and applied the pertinent facts with greater specificity. While "woefully inadequate," she has cited both relevant legal authority and record evidence in support of several of her claims of error at Step Three such that the Court understands the argument she is trying to make. Barely so, however, and by the slimmest of margins, the Court overrules the Commissioner's contentions of waiver and will address Ms. Firkins's remaining Step Three arguments on the merits.[7]

### 2. Weight Given to Opinion Evidence

Ms. Firkins alleges that the ALJ did not properly weigh the evidence from her examining and treating physicians Dr. Chheda, Dr. O'Brien, and Dr. Rasmussen, or from her ex-husband Mr. Hawthorne; specifically, that the ALJ rejected that evidence in favor of the opinions of the agency medical advisor, Dr. Kravitz. [Plaintiff's Brief at 25.]

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does

---

[7] The Court strongly encourages counsel to pay close attention to the application of the law to the facts in subsequent briefs. If counsel continues to file briefs with such sparse argumentation, he runs the risk that the Court will find his arguments waived for review.

not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Also, treating physician opinions are generally weighted more heavily than consulting physician opinions. 20 CFR § 416.927(d)(2). Opinions that are inconsistent with the "record as a whole" are generally weighted less heavily than opinions that are consistent. *Id.* at (d)(4). Additionally, "[a] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.* at (e) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…"). Nevertheless, the Court notes that the ALJ is required to consult the advice of a medical expert before making his Step Three determination, *Barnett*, 381 F.3d at 670, but sometimes experts disagree, and the ALJ must make "a reasonable choice among conflicting medical opinions." *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 829 (7th Cir. 2009) (quotations omitted). Finally, testimony from laypersons as to the claimant's functional limitations is not dispositive as to whether or not those limitations result from the claimant's medical impairments. *Arnold v. Barnhart*, 473 F.3d 816, 821-22 (7th Cir. 2007) (court found that ALJ correctly weighted the testimony of a medical expert over that of the claimant's neighbors).

Regarding Dr. Chheda, Ms. Firkin's primary care physician, he opined on three occasions that Ms. Firkins was "unable to work" due to her medical conditions. [R. 155-56, 165.] As the ALJ noted, this is an opinion on the issue of disability, an issue reserved to the Commissioner. [R. 21.] The ALJ further pointed out that Dr. Chheda was neither able to review the complete evidentiary record, nor is he an expert in mental health. [*Id.*] Therefore, the ALJ's decision to accord his opinion little weight comports with agency regulations.

Concerning Dr. O'Brien, who diagnosed Ms. Firkins with schizophrenia and mental retardation, the ALJ discounted his report in part because of Dr. Kravitz's opinion that the

diagnoses were "not well supported" by the medical evidence of record or Ms. Firkins's reported daily activities.  [R. 20.]  As to Dr. O'Brien's diagnosis of mental retardation, the ALJ pointed out that none of Ms. Firkins's multiple treating physicians diagnosed her with retardation.  [R. 19.]  He further noted that there is no evidence in the record to show that Ms. Firkins was in special education classes at school as she claimed.  [*Id.*]  As to Dr. O'Brien's diagnosis of schizophrenia, the ALJ pointed out that other medical experts, including both Dr. Kravitz and one of Ms. Firkins's treating sources, attributed at least some of Ms. Firkins's psychotic symptoms to her alcohol and drug abuse or to sleep deprivation.  [R. 15.]  Because of the inconsistencies between Dr. O'Brien's report and the rest of the medical record, the ALJ's decision to accord it little weight is supported by substantial evidence.

Dr. Rasmussen, another consulting physician, diagnosed Ms. Firkins with depression, described her mental capacity as "moderately to severely impaired," and assigned her a GAF score of 40.[8]  [R. 280.]  The ALJ accepted Dr. Rasmussen's diagnosis of depression, insofar as he found that Ms. Firkins's depression was a severe impairment.  [R. 14.]  However, the ALJ noted that Ms. Firkins had subsequently received three higher GAF scores, and that treating sources had estimated her concentration as only mildly to moderately impaired.  [R. 20, 16.]  Thus, the ALJ's decision to discount Dr. Rasmussen's GAF and mental capacity assessments is in keeping with 20 CFR § 416.927.[9]

---

[8] A GAF score is a numerical assessment of psychological, social, and occupational functioning. The scale is 1-100.  GAF scores in the range of 31-40 indicate "some impairment in reality testing or communication…or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

[9] Ms. Firkins repeatedly argues that Dr. Kravitz actually agreed with Dr. Rasmussen (and thus the ALJ based his opinion on a misunderstanding of Dr. Kravitz's opinion) [Plaintiff's Brief at 31.].  The Commissioner notes that Dr. Kravitz testified that Dr. Rasmussen's GAF assessment was "valid," but that it was only "a snapshot of a point in time" and not necessarily indicative of

Finally, as for Mr. Hawthorne's Function Report, the ALJ gave it some weight, but not as much as Dr. Kravitz's opinion.  [R. 21.]  The ALJ reasoned that Mr. Hawthorne, unlike Dr. Kravitz, had neither medical expertise nor an opportunity to review the entire evidentiary record.  [*Id.*]  According to *Arnold*, the ALJ did not err in his decision to discount Mr. Hawthorne's lay testimony.  *Arnold*, 473 F.3d at 821-22.

### 3.  Consideration of Evidence

As to Ms. Firkins's claim that the ALJ ignored some of the evidence she presented in support of her disability claim, the Court notes that although "the ALJ is not required to address every piece of evidence, he must…build an accurate and logical bridge from the evidence to his conclusion."  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted).  When evidence in the record indicates the possible presence of a Listed Impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Barnett*, 381 F.3d at 668 (citations omitted).  Ms. Firkins has identified several Listed Impairments that she claims to meet or equal, including:  Listing 12.03 (schizophrenia), Listing 12.04 (depression), Listing 12.05C (mental retardation), and Listing 12.06 (anxiety).  [Plaintiff's Brief at 23.]

Regarding Listings 12.03 (schizophrenia) and 12.05 (mental retardation), the ALJ did not find these impairments to be "medically determinable."  [R. 15.]  To support this finding, the ALJ noted first that only one physician, the consultative examiner Dr. O'Brien, had diagnosed Ms. Firkins with either of these conditions.  [*Id.*]  As to the schizophrenia, the ALJ noted that there was evidence in the record, including evidence from a treating source, that these symptoms were related to drug and alcohol abuse rather than independent psychosis.  [*Id.*]  Further, Ms.

---

Ms. Firkins's current functioning.  [Defendant's Brief at 22; R. 501.]  The Court assumes without deciding that there was some misunderstanding, but nevertheless finds that the ALJ's opinion, viewed as a whole, was supported by substantial evidence.

Firkins's own reports of her delusions were often inconsistent and accompanied by drug-seeking behavior or requests for detoxification treatment.  [R. 18-19.]  Concerning the mental retardation, the ALJ noted that Ms. Firkins's level of independence and employment history were inconsistent with such a diagnosis.  [R. 15.]  The ALJ acknowledged that Ms. Firkins claimed to have been in special education, but noted that the record did not show any evidence in support of her statements.  [*Id.*]  The ALJ also noted that Ms. Firkins's only IQ score came from a test that was done when she was thirty-nine years old, and that "[a]lthough IQ scores are generally thought to be stable over time," in this case Ms. Firkins's long history of substance abuse could have caused a decline in her IQ.  [*Id.*]  Although Ms. Firkins disagrees with the ALJ's analysis of her evidence as to her mental retardation, she does not offer any specific evidence to contradict his findings.  Therefore, the Court finds that the ALJ's analyses show "an accurate and logical bridge from the evidence to [the ALJ's] conclusion."  *Clifford*, 227 F.3d at 872.

As for Listings 12.04 (depression) and 12.06 (anxiety), the ALJ provided a specific, in-depth analysis of Ms. Firkins's restrictions in various daily activities and explained how those restrictions matched up with the criteria set out in "paragraph B" and "paragraph C" of Listings 12.04 and 12.06.  [R. 15-17.]  *See also* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04(B), (C), 12.06(B), (C).  For example, as to the "paragraph B" criteria, which are marked difficulties in daily activities, social functioning, or concentration, or repeated and extended episodes of decompensation, the ALJ considered that treating sources found Ms. Firkins's concentration to be mildly impaired in 2005 and moderately impaired in 2006.  [R. 16.]  Based on that evidence, the ALJ concluded that Ms. Firkins had a moderate limitation in concentration.  [*Id.*]  As to the "paragraph C" criteria from both Listings, the ALJ stated that he found that Ms. Firkins did not meet those criteria.  [R. 17.]  He reasoned that as to Listing 12.04, the record did

not show repeated episodes of decompensation of extended duration, although he acknowledged that Ms. Firkins had experienced "one to two episodes of decompensation, each of extended duration.  [R. 16.]  Further, the ALJ found that there was no evidence that Ms. Firkins would suffer a decompensation following even a minimal increase in mental demands, or that she had a history of inability to function outside a highly supportive living environment.  [R. 17.]  As to Listing 12.06, the record showed she had some ability to function independently outside her home.  [*Id.*]  Therefore, because the ALJ "an accurate and logical bridge" between the Listing criteria, the record evidence, and his conclusions, the fact that he didn't specifically cite every piece of evidence in a medical record of over two hundred pages does not constitute a legal error. *Clifford*, 227 F.3d at 872.

## II.  RFC Determination

Ms. Firkins alleges that the ALJ made two errors in the RFC determination:  (1) he failed to evaluate Ms. Firkins's credibility according to the factors outlined in SSR 96-7p and (2) he erroneously based the negative credibility determination on his belief that Ms. Firkins was abusing drugs and alcohol.  [Plaintiff's Brief at 31-32, Plaintiff's Reply at 15.]

### A.  Adequacy of Credibility Evaluation

Ms. Firkins argues that the ALJ failed to evaluate the credibility of her claims as to her symptoms of depression, anxiety, mental retardation, and schizophrenia using the seven factors outlined in SSR 96-7p.  [Plaintiff's Brief at 31-32.]  Those factors are:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms…and

(7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at 3. Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska*, 454 F.3d at 738 (quotations omitted).

The crux of Ms. Firkins's claim is that the ALJ failed to apply these seven factors when he made the negative credibility determination. [Plaintiff's Brief at 34.] However, the ALJ's report shows that he discussed each of the seven factors extensively. [R. 18-21.]

The ALJ considered the first factor by noting that Ms. Firkins's regular activities include household chores, walking, and occasional driving, shopping, and socializing with family and neighbors. [R. 21.] Regarding the second factor, the ALJ thoroughly summarized Ms. Firkins's treatment history, described her depression as "moderate," and noted her history of substance abuse. [R. 18-19.] He also included evidence of limitations attributed to her schizophrenia and mental retardation (even though he did not find either of these to be medically determinable impairments) and explained how he had factored those limitations into the RFC. [*Id.*] As for the third factor, the ALJ noted that Ms. Firkins testified that "interacting with others aggravates her anxiety and associated paranoia" and that he had adjusted her RFC accordingly. [R. 19.] Concerning the fourth factor, the ALJ listed Ms. Firkins's current and past medications, included her reports as to the their effectiveness and side effects, and observed that she sometimes did not take her medication or took more or different medication than was prescribed for her. [R. 20.] As for the fifth factor, the ALJ noted Ms. Firkins's history of outpatient therapy and inpatient treatments. [*Id.*] Regarding the sixth and seventh factors, the ALJ stated that he had considered

medical opinion evidence, including various GAF assessments that Ms. Firkins had received, as well as statements from Ms. Firkins's mother and ex-husband as to her abilities.  [R. 20-21.]  In summary, the ALJ discussed the relevant evidence as to Ms. Firkins's daily activities, her medications and treatments, her symptoms, and any extent to which those symptoms restricted her activities, as well as opinion evidence and GAF ratings, as required by SSR 96-7p.  As such, the credibility evaluation was supported by the evidence and not "patently wrong."  *Prochaska*, 454 F.3d at 738.

### B.  Role of Drug/Alcohol Abuse Evidence in RFC Determination

Without citation to authority, Ms. Firkins claims that the ALJ erred by basing his negative credibility determination "primarily" on his belief that she was abusing drugs and alcohol.  [Plaintiff's Reply at 15.]  However, the denial decision shows that the ALJ did not make his negative credibility determination because Ms. Firkins had a history of substance abuse, but because Ms. Firkins's statements about her substance abuse were inconsistent.  The ALJ may consider the consistency of a claimant's statements when determining her credibility; specifically, whether those statements are consistent with medical and non-medical evidence in the record and with the claimant's own previous or subsequent statements.  SSR 96-7p.

In his decision, the ALJ pointed out that Ms. Firkins told Dr. Rao she had been sober for approximately four years between June 2003 and June 2007, but this statement was inconsistent with her history of detoxification treatments in May 2005 and December 2006.  [R. 18, 413, 251, 441.]  Also, the ALJ noted that Ms. Firkins's reports of hallucinations were inconsistent, although these inconsistencies could have been caused by changes in her medications, as the ALJ pointed out.  [R. 19.]  Ms. Firkins reported a history of self-harm that was unsubstantiated by any medical treatment evidence and had a history of drug-seeking behavior.  [R. 18, 444, 415.]  Finally, these inconsistencies were not the sole basis for the ALJ's credibility determination; he

also properly evaluated Ms. Firkins's credibility according to the seven factors from SSR 96-7p. Taken together, the factors analysis and the inconsistent statements support the ALJ's negative credibility determination.  Thus, that determination is not "patently wrong."  *Prochaska*, 454 F.3d at 738.

### III.    Error in Step Five

Ms. Firkins argues that the ALJ's erroneous RFC determination naturally led to an equally erroneous finding at Step Five.  [Plaintiff's Brief at 35.]  Because the Court finds no error in the RFC determination, this argument necessarily fails.

Insofar as Ms. Firkins advances other arguments of error at Step Five, the Court notes that these "arguments" amount to only two sentences in a brief of thirty-six pages.  In those two sentences, Ms. Firkins concludes that the ALJ's RFC finding "omits all of [her] quite severe limitations" but does not cite to any record evidence of those limitations.  Additionally, Ms. Firkins cites four cases but makes no effort to explain their application to her case.  Therefore, the Court finds those arguments are waived for lack of a developed argument and a generally unsupported claim.  *See Lachman*, 852 F.2d at 291 n.1 (citation omitted).

CONCLUSION

"The standard for disability claims under the Social Security Act is stringent….Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Firkins does not qualify for disability benefits;

therefore, the Court AFFIRMS the Commissioner's denial of her application.   Final judgment

will be entered accordingly.

      SO ORDERED:

      08/03/2010

                           Hon. Jane Magnus-Stinson, Judge
                           United States District Court
                           Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net